## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PINCHUS E. RAUL, Derivatively on Behalf of Hercules Offshore, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 11-560-LPS |
| | : | |
| JOHN T. RYND, JAMES W. NOE, STEPHEN M. BUTZ, TROY L. CARSON, TERRELL L. CARR, LISA W. RODRIGUEZ, THOMAS N. AMONETT, THOMAS J. MADONNA, F. GARDNER PARKER, SUZANNE V. BAER, STEPHEN A. WEBSTER, THOMAS R. BATES, JR., THOMAS M. HAMILTON, THIERRY PILENKO and FREDERIC W. COOK & CO., INC., | : : : : : : : : : : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| HERCULES OFFSHORE, INC., | : | |
| | : | |
| Nominal Defendant. | : | |

Ryan Ernst, Esquire, of O'KELLY, ERNST, BIELLI & WALLEN, LLC, Wilmington, DE.
Eduard Korsinsky, Esquire and Michael H. Rosner, Esquire, of LEVI & KORSINSKY, LLP,
New York, NY.

    Attorneys for Plaintiff Pinchus E. Raul.

William M. Lafferty, Esquire, Susan W. Waesco, Esquire, Ryan D. Stottmann, Esquire, and
Angela C. Whitesell, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
Wilmington, DE.
David D. Sterling, Esquire, S. Joy Dowdle, Esquire, and Christie Mathis, Esquire, of BAKER
BOTTS LLP, Houston, TX.

    Attorneys for Defendants John T. Rynd, James W. Noe, Stephen M. Butz, Troy L.
    Carson, Terrell L. Carr, Lisa W. Rodriguez, Thomas N. Amonett, Thomas J. Madonna, F.
    Gardner Parker, Suzanne V. Baer, Steven A. Webster, Thomas R. Bates, Jr., Thomas M.
    Hamilton, Thierry Pilenko, and Hercules Offshore, Inc.

Sally J. Daugherty, Esquire, of SALMON, RICCHEZZA, SINGER & TURCHI, LLP, Wilmington, DE.
Joseph L. Turchi, Esquire, of SALMON, RICCHEZZA, SINGER & TURCHI, LLP, Philadelphia, PA.
David L. Miller, Esquire, of MILLER, SCAMARDI & CARRABBA P.C., Houston, TX.

     Attorneys for Defendant Frederic W. Cook & Co., Inc.

## **MEMORANDUM OPINION**

March 14, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Hercules Offshore, Inc. ("Hercules" or "the Company"), a Delaware corporation, provides

shallow-water offshore drilling and marine services to the oil and natural gas exploration and

production industry. Pincus E. Raul ("Plaintiff"), a Hercules shareholder, brings this lawsuit

derivatively on behalf of Hercules. Plaintiff alleges that the Hercules board of directors, assisted

by an advisor, Frederick W. Cook & Co., Inc. ("FWC"), breached fiduciary duties and securities

laws by approving 2010 compensation for Hercules' top executives, despite the failure of a

"say-on-pay" shareholder vote on that compensation. Under these circumstances, Plaintiff

contends that pre-suit demand would be futile and is, therefore, excused.

Pending before the Court are two motions to dismiss the complaint for failure to satisfy

the pre-suit demand requirement for derivative suits, as well as for failure to state a claim upon

which relief may be granted. (D.I. 24; D.I. 26) The Court heard oral argument on February 9,

2012. (D.I. 48) ("Tr.")

For the reasons that follow, the Court will grant the motions to dismiss.

## **BACKGROUND**[1]

### I. **The Parties And The Complaint**

Plaintiff is and has been a shareholder of Hercules at all relevant times, since at least

---

[1]On a motion to dismiss, the Court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). The Court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also King v. Baldino*, 648 F. Supp. 2d 609, 616 (D. Del. 2009) (stating court may consider documents integral to or incorporated by reference in complaint). Here, the Court may consider the Proxy Statement. (*See* D.I. 25 Ex. A; *see also* Tr. at 11, 13, 33-34)

1

October 2010. (D.I. 1 ¶ 17) He filed the instant lawsuit on June 22, 2011. (D.I. 1)

In the Verified Shareholder Derivative Complaint (the "Complaint"), Plaintiff names as defendants the individual members of Hercules' board of directors ("Board"),[2] its highest-level executives ("Executives"),[3] and its compensation consultant, FWC.[4] (*Id.* at 1) Hercules is also identified as a nominal defendant. (*Id.* at 1 ¶¶ 18, 34)

The Complaint generally alleges: (i) breaches of fiduciary duty in connection with the Board's approval of the Company's 2010 executive compensation plan; and (ii) violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), due to false and misleading statements contained in the Company's Definitive Proxy Statement distributed in connection with its May 10, 2011 Annual Meeting of Stockholders (the "Proxy Statement"). (*Id.* at 1) Specifically, five counts are alleged, as further described later in this Opinion.

---

[2]The Company's Board consists of at least the following eight individuals, none of whom are Hercules employees: Thomas N. Amonett ("Amonett"); Suzanne V. Baer ("Baer"); Thomas R. Bates, Jr. ("Bates"); Thomas M. Hamilton ("Hamilton"); Thomas J. Madonna ("Madonna"); F. Gardner Parker ("Parker"); Thierry Pilenko ("Pilenko"); and Steven A. Webster ("Webster"). (*See* D.I. 1 ¶¶ 25-32; D.I. 25 at 3; *see also* D.I. 27 at 3) Although some papers indicate that John T. Rynd ("Rynd") is also a director, the Complaint does not specifically make such an allegation. (*See* D.I. 25 at 3, 9 & n.9, 10; *see also* D.I. 1 ¶ 19)

[3]The Executives are: Rynd, Hercules' CEO and President; James W. Noe ("Noe"), Senior Vice President and General Counsel; Stephen M. Butz ("Butz"), CFO; Troy L. Carson ("Carson"), Chief Accounting Officer; Terrell L. Carr ("Carr"), Vice President of Worldwide Operations; and Lisa W. Rodriguez ("Rodriguez"), Vice President of Human Resources. (*See* D.I. 1 ¶¶ 19-24; D.I. 25 at 4, Ex. A at 14; *see also* D.I. 27 at 3)

[4]FWC is an executive compensation advisory firm with whom Hercules entered into a consulting contract for the provision of advice and assistance with respect to the Company's 2010 executive compensation program. (*See* D.I. 1 ¶¶ 33, 85; *see also* D.I. 27 at 3-4)

2

## II.     The Motions To Dismiss

On July 25, 2011, the Board, Executives, and Hercules (collectively, the "Hercules

Offshore Defendants" or "HOD"), filed a motion seeking dismissal of Counts I, II, and V of the

Complaint, pursuant to Federal Rules of Civil Procedure 23.1(b)(3), 12(b)(6), and 9(b), for (i)

failure to make a pre-suit demand on the Board and failure adequately to plead why demand

would have been futile, and (ii) failure to state a claim upon which relief may be granted (the

"HOD Motion"). (D.I. 24; *see also* D.I. 25; D.I. 34) On July 27, 2011, FWC filed a motion

requesting dismissal of Counts III and IV, also based upon Plaintiff's failure to comply with the

demand requirements and failure to state a claim (the "FWC Motion"). (D.I. 26; *see also* D.I. 27;

D.I. 38)

## III.     The Dodd-Frank Act[5]

The Dodd-Frank Wall Street Reform and Consumer Protection Act, *see* 15 U.S.C. § 78n-

1 ("Dodd Frank"), was enacted on July 21, 2010. (*See* D.I. 1 ¶ 1; D.I. 25 at 1) Section 951 of

Dodd-Frank requires that publicly-traded companies include a resolution in their proxy

statements asking shareholders to approve, in a non-binding, "say-on-pay" shareholder vote, the

compensation of their executive officers. (*See* D.I. 1 ¶¶ 2, 5 & n.3; D.I. 25 at 1; 15 U.S.C. § 78n-

1; 17 C.F.R. § 229.402) A separate resolution is required to determine whether this shareholder

say-on-pay vote should occur every one, two, or three years. (*See* D.I. 1 ¶ 2; 15 U.S.C. § 78n-1)

Dodd-Frank explicitly provides that say-on-pay votes "shall not be binding" on a

---

[5]Further background concerning Dodd-Frank can be found in other recent judicial
decisions. *See, e.g., Gordon v. Goodyear*, 2012 WL 2885695 (N.D. Ill. July 13, 2012);
*Laborers' Local v. Intersil*, 868 F. Supp. 2d 838, 2012 WL 762319 (N.D. Cal. 2012); *Weinberg
ex rel. BioMed Realty Trust, Inc. v. Gold*, 838 F. Supp. 2d 355, 362 (D. Md. 2012).

3

company or its board of directors, and "may not be construed" in any of the following ways:
(1) "as overruling a decision" by the company or its board of directors; (2) "to create or imply any change to the fiduciary duties" of the company or its board of directors; (3) "to create or imply any additional fiduciary duties" for the company or its board of directors;" or (4) "to restrict or limit the ability of shareholders to make proposals for inclusion in proxy materials related to executive compensation." 15 U.S.C. § 78n-1(c).

On October 18, 2010, the Securities and Exchange Commission ("SEC") issued proposed rules under the Exchange Act to implement Section 951 of Dodd-Frank. (*See* D.I. 1 ¶ 5) On January 25, 2011, the SEC adopted rule changes relating to shareholder approval of executive compensation. (*See id.*; *see also* 15 U.S.C. § 78n-1)

## IV.    Hercules' Proxy Statement and 2010 Executive Compensation Plan

On March 25, 2011, Hercules issued its Proxy Statement for its Annual Meeting scheduled for May 10, 2011, at which Hercules was to hold its first Dodd-Frank mandated "say-on-pay" vote. (D.I. 1 ¶¶ 6, 48; D.I. 25 Ex. A at 31) The Proxy Statement contains a detailed discussion of the Company's executive compensation practices and policy. (*See, e.g.,* D.I. 25 Ex. A at 4-6, 9, 20) Generally, as provided in the Proxy Statement, the Company's executive compensation programs are designed:

- to attract, retain, motivate, and reward executive officers who are capable of leading the Company in a complex, competitive, and changing industry;

- to align the interests of our executive officers with those of our stockholders;

- to pay for performance;

4

- to ensure that performance-based compensation does not encourage excessive risk taking; and

- to increase retention by requiring forfeiture of a substantial portion of an executive officer's compensation upon voluntary termination of employment.

(*Id.*; *see also* D.I. 1 ¶ 49)  The Proxy Statement further provides that the Company's compensation committee (the "Compensation Committee") "will continue to design compensation arrangements with the objectives of emphasizing pay for performance and aligning the financial interests of our executives with the interests of long-term stockholders, and require executives to retain ownership of a significant portion of our common stock they receive as compensation." (D.I. 25 Ex. A at 43; *see also* D.I. 1 ¶ 50)

Hercules' 2010 executive compensation plan, approved by Hercules' Board, raised executive compensation by between 40 and 190%.  (D.I. 1 ¶¶ 10, 20-32, 47, 67)  CEO Rynd's compensation was increased from approximately $1.3 million in 2009 to $2.5 million in 2010.  (*Id.* ¶¶ 10, 19)  Similarly, CFO Butz's compensation increased from $333,000 in 2009 to $963,000 in 2010. (*See id.* ¶¶ 10, 21)  Senior V.P. and General Counsel Noe's compensation increased by 108% to $1.23 million. (*Id.* ¶ 20)  Chief Accounting Officer Carson's compensation increased 160% to more than $800,000. (*Id.* ¶ 22)  Vice President of Worldwide Operations Carr's compensation increased 150% to just over $1 million. (*Id.* ¶ 23)  Vice President of Human Resources Rodriguez's compensation increased 40% to approximately $950,000. (*Id.* ¶ 24)

This increased compensation was awarded at a time that Hercules was not performing well. In 2010, the Company posted a net operating loss of $1.17 per share, which represented an

5

$85.4 million, or 11%, decline in total revenue compared to the prior year. (*Id.* ¶¶ 41-44) The Company also experienced a $300 million decrease in total assets, a $100 million decrease in net cash from operating activities, an almost 13% (more than $100 million) decrease in stockholder equity, and a drop in stock price to $3.48 per share, a decline of more than $1 per share. (*Id.* ¶¶ 45-46)

As required by Dodd-Frank, the Company's 2011 Proxy Statement included a resolution asking for shareholder approval – in a "nonbinding advisory vote . . . on an advisory basis" – of the Company's 2010 executive compensation. (D.I. 25 Ex. A at 43; *see also* D.I. 1 ¶ 2)  The Board had unanimously approved the executive compensation package for 2010; in the Proxy Statement, the Board had likewise unanimously recommended that shareholders vote to approve that compensation plan. (D.I. 1 ¶¶ 7, 48, 51; *see* D.I. 25 Ex. A at 43)

However, at the May 10, 2011 Annual Meeting, Hercules' stockholders rejected the Company's 2010 executive compensation package, with approximately 59% of Hercules' shares voting against approval. (*See* D.I. 1 ¶¶ 8, 51)  Nonetheless, the compensation increases pursuant to the 2010 plan were implemented and have not been subsequently rescinded. (*See* D.I. 1 ¶ 53)

On May 22, 2012, Plaintiff submitted a letter to the Court indicating that on May 15, 2012, the Hercules shareholders again voted down the Company's executive compensation plan, this time by a 52-48% margin. (D.I. 51)

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 23.1

Federal Rule of Civil Procedure 23.1(a) applies "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a

6

right that the corporation or association may properly assert but has failed to enforce. The

derivative action may not be maintained if it appears that the plaintiff does not fairly and

adequately represent the interests of shareholders or members who are similarly situated in

enforcing the right of the corporation or association." In order to maintain such a derivative suit,

the plaintiff must have owned shares in the company at the time of the disputed transaction. *See*

*id.*

Additionally, the complaint must "state with particularity"

> (A) any effort by the plaintiff to obtain the desired action
> from the directors or comparable authority and, if necessary, from
> the shareholders or members; and

> (B) the reasons for not obtaining the action or not making
> the effort.

Fed. R. Civ. P. 23.1(b)(1), (3). In this way, Rule 23.1 imposes a requirement that a shareholder

plaintiff make a pre-suit demand on the board of directors prior to filing a derivative suit on

behalf of the company, or to provide a satisfactory explanation for why the plaintiff has not done

so. This demand requirement allows the corporate machinery to self-correct problems and to

safeguard against frivolous lawsuits. *See Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007).[6]

When it is clear that making a demand upon the company's board of directors would be

futile, the demand requirement may be excused. *See Aronson v. Lewis*, 473 A.2d 805, 815 (Del.

1984) (laying out standard for demand futility). In order to excuse the demand requirement, a

derivative complaint must allege particularized facts creating a "reasonable doubt" that: (1) the

---

[6]As Hercules is a Delaware corporation, Delaware law governs the analysis of whether to excuse demand. *See generally Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 101-05 (1991).

7

directors were disinterested and independent; or (2) the challenged transaction was the product of a valid exercise of business judgment. *See Aronson*, 473 A.2d at 815; *see also Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000). If either prong is satisfied, then a plaintiff has met the demand futility burden and the demand requirement is excused. *See In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165 (D. Del. 2009). If a plaintiff fails to satisfy the first prong of *Aronson*, there is a presumption that the board's actions were the product of a valid exercise of business judgment. *See Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004); *see also Intel*, 621 F. Supp. 2d at 170. Under the second prong of *Aronson*, "plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005).

## II.   **Fed. R. Civ. P. 12(b)(6)**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

8

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929

(2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief

that is plausible on its face" must be alleged. *Twombly*, 127 S. Ct. at 1974. At bottom, "[t]he

complaint must state enough facts to raise a reasonable expectation that discovery will reveal

evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech.*

*Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The

Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132

F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and

unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113

F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82

F.3d 63, 69 (3d Cir. 1996).

## III.     Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires a complaint to plead "with particularity the

circumstances constituting fraud or mistake." "Malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Although a plaintiff is not

required to allege every material detail – such as date, location, or time – a plaintiff must plead

the circumstances of the fraud with sufficient particularity 'to place defendants on notice of the

precise misconduct with which they are charged.'" *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL

4455743, at *13 (D. Del. Sept. 30, 2008), *aff'd* 346 Fed. Appx. 859 (3d Cir. 2009)); *see also*

*Seville Indus. Mack Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

9

Hence, an allegation of securities fraud must be supported "with all of the essential

factual background that would accompany 'the first paragraph of any newspaper story' [–] that is,

the 'who, what, when, where, and how of the events at issue.'" *Snowstorm Acquisition Corp. v.*

*Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 701 (D. Del. 2010). "Whether a Securities Act claim

is subject to Rule 9(b) requires an assessment of the particular claim to determine whether acts of

fraud on the part of the defendants form the basis for the claim against them.*" In re Suprema*

*Specialities, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). "[W]here the plaintiff grounds

[its] Securities Act claims in allegations of fraud – and the claims thus 'sound in fraud' – the

heightened pleading requirements of Rule 9(b) apply." *Id.*; *see also In re Rockefeller Ctr. Props.,*

*Inc. Sec. Litig.*, 311 F.3d 198, 212 (3d Cir. 2002).

## PARTIES' CONTENTIONS

## I.    **Defendants' Contentions**

### A.    **Hercules Offshore Defendants**

The Hercules Offshore Defendants argue that Plaintiff has not alleged the particularized

facts required by Rule 23.1 to excuse him from making a pre-suit demand on the Hercules Board

to sue for the acts alleged in his Complaint. (*See* D.I. 25 at 2-3, 7-18) Plaintiff claims generally

that demand would have been futile – and is, therefore, excused – because (i) "each of the

directors has been named as a defendant in this action and was a director when the excessive

2010 executive compensation was issued;" (ii) "each director participated in issuing materially

false and/or misleading statements" contained in the Proxy Statement; and (iii) each of the

directors, by virtue of having approved the 2010 executive compensation plan and making

allegedly false and misleading statements in the Proxy Statement, "face[s] a substantial

10

likelihood of liability and [is] interested in the outcome of this action." (D.I. 1 ¶¶ 66, 67, 68) The Hercules Offshore Defendants contend that these allegations are inadequate to excuse demand.

In the view of the Hercules Offshore Defendants, Plaintiff has failed to allege facts raising a reasonable doubt that a majority of the Board is independent and disinterested. The mere fact of Board approval of the 2010 compensation plan does not excuse demand. Moreover, because the Complaint fails to establish that the Company had a strict pay-for-performance policy, the Board Defendants face no substantial likelihood of liability. (*See* D.I. 34 at 2-8)

The Hercules Offshore Defendants additionally argue that Plaintiff has failed to allege facts raising a reasonable doubt as to whether the 2010 executive compensation was the product of a valid business judgment. While Plaintiff relies heavily on the fact that a majority of the shares that voted on the "say-on-pay" resolution at the 2011 Annual Meeting disapproved the 2010 compensation (*see* D.I. 1 ¶ 8; D.I. 25 at 5), there is no basis for Plaintiff to make the conclusory leap that such "adverse shareholder vote rebuts the presumption that the Hercules Board's 2010 executive compensation decisions were the product of a valid exercise of business judgment." (D.I. 1 ¶ 53; *see also* D.I. 25 at 5)

Even if demand were excused, the Hercules Offshore Defendants contend that the Complaint fails to state a claim on which relief may be granted. Because the Proxy Statement contains no material false or misleading statements about the Company's executive compensation practices, Plaintiff has not stated a claim for violation of Section 14(a) of the Exchange Act. (*See* D.I. 25 at 1, 13-15, 18-19; D.I. 34 at 6) Nor does the Complaint adequately state a claim for breach of the fiduciary duty of loyalty in the Board's approval of the 2010

11

executive compensation and issuance of the Proxy Statement. (*See* D.I. 25 at 3, 19) Similarly, the Complaint fails to state a claim for "unjust enrichment." (*Id.* at 5, 19-20; D.I. 34 at 10; *see* D.I. 1 ¶ 53)

## B.  FWC

FWC has likewise moved to dismiss the claims against it based on Plaintiff's purported failure to satisfy the demand requirements of Rule 23.1. FWC further moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (D.I. 26; *see also* D.I. 27; D.I. 38) In addition to echoing the points made by the Hercules Offshore Defendants, FWC makes other points as well.

For instance, Plaintiff's claim that FWC aided and abetted a breach of fiduciary duty fails first because no primary wrong has been adequately alleged and also because Plaintiff fails to allege – in anything other than a conclusory fashion – that FWC "knowingly participated" in any such fraud. (*See* D.I. 27 at 6-12) Plaintiff's claim for breach of contract or professional negligence fails because Plaintiff has not adequately alleged a breach, as Plaintiff has not identified any wrongful act or omission on the part of FWC. (*See* D.I. 38 at 9-10)

## II.  **Plaintiff's Contentions**

### A.  **Relating To Hercules Offshore Defendants**

Plaintiff emphasizes that the Board and Executives owed fiduciary duties of care and loyalty to the Company. (D.I. 1 ¶ 56) Plaintiff alleges that the Board's approval of the 2010 executive compensation: (i) violated the Company's pay-for-performance policy, (ii) was not the product of a valid exercise of business judgment, and (iii) caused the Company's Proxy Statement to be materially false and misleading, because the Board failed to disclose that the

12

2010 executive compensation had no meaningful relationship to the Company's performance. (*Id.* ¶¶ 12, 62)  On this last point, Plaintiff specifically argues that the Hercules Offshore Defendants knew or should have known that increasing executive compensation by 40-190% in light of the Company's performance violated the Hercules pay-for-performance executive compensation philosophy as outlined in the Proxy Statement. (*See id.* ¶¶ 49, 59)  Moreover, the shareholders' rejection of the 2010 executive compensation plan strongly evidences that the compensation is not in the best interest of Hercules and was not the product of business judgment. (*See id.* ¶¶ 60-61)

Moreover, continues Plaintiff, the Proxy Statement "falsely stated that the Board 'emphasiz[ed] pay for performance and aligned the financial interests of long-term stockholders.'" (*Id.* ¶¶ 14, 50)  The distribution of the Proxy Statement by the Hercules Offshore Defendants violated Section 14(a).  Additionally, the Executives were unjustly enriched, as the 2010 pay increases violated Hercules' pay-for-performance policy and were unwarranted in light of Hercules' poor 2010 financial performance. (*See id.* ¶¶ 91-92)

Finally, Plaintiff contends that making a pre-suit demand upon the Hercules Board would have been a useless and futile endeavor, and, therefore, Plaintiff's failure to make such a demand is excused. (*See id.* ¶ 65)  Each of the Board members has been named as a defendant, voted in favor of adopting the 2010 executive compensation plan, participated in issuing false and misleading statements in the Proxy Statement, and was a director when the shareholders disapproved of that compensation plan. (*See id.* ¶ 66)  "[E]ach of the directors is interested in the outcome of this litigation" and, consequently, "face[s] a substantial likelihood of liability;" "the directors are not entitled to business judgment protection for their decisions relating to the 2010

13

executive compensation, for the adverse shareholder vote rebuts that presumption;" and "the directors have exhibited antipathy towards the relief sought herein by first recommending approval of the 2010 executive compensation and then thwarting the will of the shareholders by failing to rescind the 2010 executive compensation after the shareholders overwhelming voted against it." (*Id.* ¶¶ 67-70; *see also* D.I. 32)

## B.      Relating To FWC

Plaintiff contends that FWC, as the Board's compensation consultant, aided and abetted and rendered substantial assistance to the Board in its breach of fiduciary duty, resulting in injury to shareholders. (*See* D.I. 1 ¶¶ 80-82) FWC entered into a contract with Hercules to provide advice and assistance with respect to the Company's 2010 executive compensation program. (*See id.* ¶ 85) FWC assisted the Hercules Board in determining the 2010 executive compensation; when "judged in conjunction with Hercules' disappointing 2010 financial results, increasing the 2010 executive compensation by between 40%-190% was unreasonable and not in good faith." Consequently, FWC breached its contractual obligation to render competent and sound advice and services regarding Hercules' 2010 executive compensation. (*Id.* ¶¶ 86-88)

## DISCUSSION

## I.      Plaintiff's Claims Are Based On Flawed Premises

Before turning to the specific issues presented by the pending motions to dismiss, it is necessary to observe that Plaintiff's claims are based on two flawed premises. Plaintiff misconstrues the effect of the shareholder vote against the Hercules 2010 executive compensation plan. Plaintiff also mischaracterizes that compensation plan.

14

A.    **The Effect Of A Say-On-Pay Vote**

Plaintiff relies heavily on the fact that the Hercules shareholders voted against the 2010

executive compensation plan yet the Board thereafter did nothing to rescind or modify that plan

in response.  However, as noted above, Dodd-Frank explicitly states that say-on-pay votes "shall

not be binding" on a company or its board of directors.  15 U.S.C. § 78n-1(c).  Dodd-Frank also

explicitly states that the results of say-on-pay votes "may not be construed" in any of the

following ways: (1) "as overruling a decision" by a company or its board of directors; (2) "to

create or imply any change to the fiduciary duties" of a company or its board of directors; (3) "to

create or imply any additional fiduciary duties" for a company or its board of directors;" or

(4) "to restrict or limit the ability of shareholders to make proposals for inclusion in proxy

materials related to executive compensation."  *Id.*; *see also, e.g.*, *Jacobs Eng'g Group, Inc.*

*Consol. S'holder Deriv. Litig.*, C.A. No. BC454543, at 8 (Cal. Super. Ct. Mar. 6, 2012) (D.I. 50

Ex. B at 7-8).  Plaintiff's allegations and arguments in this litigation fail to recognize these

realities of Dodd-Frank.

B.    **Hercules' 2010 Executive Compensation Plan**

Plaintiff also relies heavily on his view that Hercules has adopted a strict pay-for-

performance policy.  In support of this contention, Plaintiff points to the Proxy Statement.  As

Plaintiff alleges, that statement discloses:

> Our compensation committee will continue to design compensation
> arrangements with the objectives of emphasizing pay for
> performance and aligning the financial interests of our executives
> with the interests of long-term stockholders.

(D.I. 25 Ex. A at 20-21, 43)  Yet Plaintiff has been selective in his characterization of the

15

Company's compensation plan. A fuller understanding of that plan, as disclosed in the Proxy

Statement on which Plaintiff relies for his claim, reveals serious flaws in Plaintiff's case.

It is true that Hercules' Proxy Statement explains that "pay for performance" is part of the

"philosophy and objectives" of the Company's compensation programs. (D.I. 25 Ex. A at 20)

However, the same statement also identifies other goals. (*See* D.I. 25 at 5, 14; D.I. 34 at 2-3, 5,

7) In fact, the Proxy Statement states that the Company's executive compensation policy is

designed to achieve five goals, of which "pay for performance" is but one. (D.I. 25 Ex. A at 20-

21) The five goals are:

- to attract, retain, motivate, and reward executive officers who are capable of leading the Company in a complex, competitive, and changing industry;

- to align the interests of our executive officers with those of our stockholders;

- to pay for performance;

- to ensure that performance-based compensation does not encourage excessive risk taking; and

- to increase retention by requiring forfeiture of a substantial portion of an executive officer's compensation upon voluntary termination of employment.

(*Id.*; *see also id.* at 20-26 (setting forth compensation philosophy and performance objectives))

One of these goals merits particular discussion in light of Plaintiff's allegations. This is

the Company's goal of retaining its executive officers, a goal that may have taken on increased

importance precisely because of the difficult financial circumstances in which the Company

found itself in and around 2010. As the Proxy Statement explains:

16

> The Board of Directors and its Compensation Committee . . . remain committed to retaining the existing management team, and as a result, have offered cash retention incentives to recover some of the shortfall in long-term incentive compensation levels. While a portion of the awards are delivered solely upon continued employment, the majority of such awards are earned only if the company achieves specific performance goals during the year. ***This "Incentive and Retention Plan" was implemented in 2010, and covers both the 2010 and 2011 fiscal years.*** The committee believes that the implementation of this plan has been critical in deflecting efforts by competitors that can offer attractive compensation opportunities, and in keeping the management team focused on executing the current business strategy for future shareholder value creation.

(D.I. 25 Ex. A at 18) (emphasis added) The goal of retaining an executive could, under certain circumstances, lead to increased executive compensation even if the Company is experiencing poor financial performance.

Moreover, the Proxy Statement explains that total executive compensation is based not only on the Company's performance, but also on factors including "advice from a compensation consultant, established corporate goals and objectives, company performance targets, personal performance objectives, and the compensation paid by the company's competitors." (D.I. 25 Ex. A at 9; *see also id.* at 17-18 (linking 2011 pay for performance to, *inter alia*, achievement of safety goals); *id.* at 23 (explaining that Company's plan includes both financial and safety objectives as well as personal goals)) In addition, as Defendants observe, Plaintiff's allegations "incorrectly presume that executive compensation is solely awarded retrospectively . . . . As is common practice in executive compensation, the Proxy Statement makes clear that much of the Company's executive compensation is prospective." (D.I. 34 at 7)

Hence, Plaintiff's characterization of the Hercules executive compensation policy as

17

essentially mandating a strong correlation between certain financial aspects of the Company's performance and the compensation of the Company's executives is incorrect.

## II.     Dismissal For Failure To Adequately Allege Demand Futility

Plaintiff did not make a pre-suit demand on the Board.  Consequently, his derivative Complaint must be dismissed unless Plaintiff can establish that demand should be excused. Plaintiff contends that, here, demand would have been futile because: (i) "each of the directors has been named as a defendant in this action and was a director when the excessive 2010 executive compensation was issued" and "each director participated in issuing materially false and/or misleading statements" in the Proxy Statement, and (ii) each of the directors, by virtue of having approved the 2010 executive compensation and making allegedly false and misleading statements in the Proxy Statement, "face[s] a substantial likelihood of liability and [is] interested in the outcome of this action."  (D.I. 1 ¶¶ 66-68; *see* D.I. 32 at 9-10)  The Court concludes, however, that Plaintiff has failed to allege particularized facts sufficient to create a reasonable doubt that: (1) a majority of the directors are independent and disinterested, or (2) the challenged conduct was a valid exercise of business judgment, thereby excusing demand.

Delaware law presumes that a corporation's board of directors is disinterested and independent.  *See FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009).  To rebut that presumption under the first prong of *Aronson*, Plaintiff must undertake a "director-by-director analysis" showing that a majority of the Board was incapable, due either to a material personal interest or domination and control, of objectively evaluating a demand, if made.  *See Postorivo v. AG Paintball Holdings*, 2008 WL 553205, at *7 (Del. Ch. Feb. 29, 2008).  Plaintiff has failed to engage in a director-by-director analysis; nor has he demonstrated

18

that a majority of the Board lacked the requisite independence or suffered from any disabling

interest. (*See* D.I. 25 at 9; *see also Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 363 (Del.

1993) ("This Court has never held that one director's colorable interest in a challenged

transaction is sufficient, without more, to deprive a ***board*** of the protection of the business

judgment rule presumption of loyalty."))

Nor has Plaintiff shown that demand would have been futile due to a majority of the

Board having faced a "substantial likelihood of liability." Plaintiffs have failed to allege

particularized facts showing a "substantial likelihood" of such personal liability. *See Aronson*,

473 A.2d at 815; *see also Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).

Much of the force of Plaintiff's contentions derives from Plaintiff's insistence that the

Board "ran afoul of the shareholders' will . . . by proceeding with a compensation plan that

directly contravened the shareholders' express demand as communicated by their resounding

vote 'against' that plan." (*See* D.I. 32 at 15-16) As explained above, however, this contention

fails because it misconstrues the effect of a say-on-pay vote under Dodd-Frank. Under Dodd-

Frank, the Board had no obligation to reevaluate its executive compensation plan in light of the

shareholders' vote. Additionally, Dodd-Frank explicitly prohibits construing the shareholder

vote as "overruling" the Board's compensation decision. Accordingly, the Board's failure to

change course in light of the say-on-pay vote does not give rise to a substantial likelihood of

personal liability, nor demonstrate that the Board would have been unable objectively to evaluate

a demand to bring suit. *See Aronson*, 473 A.2d at 817 ("[T]he mere threat of personal liability

for approving a questioned transaction, standing alone, is insufficient to challenge either the

independence or disinterestedness of directors.").

19

Other courts reviewing similar allegations have reached conflicting conclusions regarding the futility of pre-suit demand. In *NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*, 2011 WL 4383368, at *4 (S.D. Ohio Sept. 20, 2011), the Southern District of Ohio, applying Ohio law, held that demand was futile when all directors who approved the challenged compensation were named as defendants. The Court wrote: "[g]iven that the director defendants devised the challenged compensation, approved the compensation, recommended shareholder approval of the compensation, and suffered a negative shareholder vote on the compensation," the plaintiff had "demonstrated sufficient facts to show that there is reason to doubt these same directors could exercise their independent business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation." *Id.* Other courts, applying Delaware law, have disagreed with the *Cincinnati Bell* decision. *See Plumbers Local No. 137 Pension Fund ex rel. Umpqua Holdings Corp. v. Davis*, 2012 WL 104776, at *8 (D. Or. Jan. 11, 2012) (describing plaintiffs' reliance on *Cincinnati Bell* as "misplaced" because "it is unlikely that the case remains viable legal authority" and did not apply Delaware law); *Jacobs Eng'g Group, Inc. Consol. S'holder Deriv. Litig.*, C.A. No. BC454543 (Cal. Super. Ct. Nov. 10, 2011) (D.I. 44 Ex. D at 2) (stating conclusion reached in *Cincinnati Bell* was not "persuasive as a statement of governing Delaware law"); *see also Weinberg ex rel. BioMed Realty Trust, Inc.*, 838 F. Supp. 2d at 362 (agreeing with *Plumbers Local No. 137*). The Court finds nothing in these and other decisions cited by the parties to alter its decision that demand here is not excused.

Thus, the motions to dismiss based on lack of demand will be granted. All claims against all defendants will be dismissed.

**III.     Dismissal For Failure To State A Claim On Which Relief May Be Granted**

Although not necessary to do so in light of the Court's conclusion that the Complaint must be dismissed pursuant to Rule 23.1, in the interest of completeness the Court will also analyze whether the Complaint should also be dismissed pursuant to Rules 9(b) and 12(b)(6).

Count 1 of the Complaint alleges that the Board and Defendants Rynd and Noe violated Section 14(a) of the Exchange Act by causing to be issued materially false and misleading statements contained in the Hercules Proxy Statement. To prevail on his Section 14(a) claim, Plaintiff must show that: (1) the Proxy Statement contains a material misrepresentation or omission, (2) which caused plaintiff injury, and (3) that the proxy solicitation itself was "an essential link in the accomplishment of the transaction." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002). Plaintiff's Section 14(a) claim is predicated on the allegation that "[t]he Proxy misleadingly failed to disclose that the Board did not follow a pay for performance policy in 2010, executive compensation had no meaningful relationship to the Company's performance, and the Board did not emphasize pay for performance in establishing executive compensation." (D.I. 32 at 18) Because, according to the Proxy Statement, Hercules did not have a strict pay-for-performance compensation policy, Plaintiff has been unable to identify a materially false statement in that Proxy Statement. It follows that Plaintiff has failed to state a Section 14(a) claim on which relief may be granted.

Count II of the Complaint alleges that the Board breached its fiduciary duty of loyalty.[7] A

---

[7]To the extent Plaintiff is claiming a breach of the duty of loyalty based on false and misleading statements in the Proxy Statement (*see* D.I. 1 ¶¶ 57, 77), that claim fails given the failure to adequately allege such statements, as already explained in connection with Plaintiff's Section 14(a) claim.

duty-of-loyalty claim requires either a personal financial conflict or that the directors "knowingly and completely failed to undertake their responsibilities." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-44 (Del. 2009). Plaintiff alleges, in conclusory fashion, that the Board "knew or should have known," by virtue of the directors' positions and access to Hercules internal information, that "increasing 2010 executive compensation . . . violated Hercules' pay-for-performance executive compensation policy." (D.I. 1 ¶ 59; D.I. 25 at 12) Allegations that a director "should have been aware" may not be sufficient to create an inference that a director had a culpable state of mind. *See Wood v. Baum*, 953 A.2d 136, 142-43 (Del. 2008); *see also id.* at 142 ("[B]oard approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors."). In any event, here Plaintiff fails to state a claim for breach of the duty of loyalty at least because, for reasons already explained, his allegation that the 2010 executive compensation violated Hercules' pay-for-performance compensation policy is not plausible. *See generally Assad v. Hart*, 2012 WL 33220, at \*4 (S.D. Cal. Jan. 6, 2012) (holding Dodd-Frank "did not create a private right of action or create new fiduciary duties" because it expressly "states that it 'may not be construed . . . to create or imply any change to fiduciary duties' nor does it 'create or imply any additional fiduciary duties.'"); *Teamsters Local 237 Additional Sec. Benefit Fund v. McCarthy et al.*, No. 2011-cv-197841, at 11 (Ga. Super. Ct. Sept. 16, 2011) (D.I. 44 Ex. A) (rejecting plaintiffs' contention that negative "say-on-pay" vote rebuts presumption of business judgment rule, as such claim "finds no support either in governing Delaware law or in the Dodd-Frank Act's new say on pay provisions").

Count III alleges that FWC aided and abetted the Board's breach its fiduciary duties owed

22

to Hercules. A cause of action for aiding and abetting a breach of fiduciary duty requires: "(i) the existence of a fiduciary relationship, (ii) a breach of that relationship, (iii) knowing participation in the breach by a defendant who is not a fiduciary, and (iv) damages proximately caused by the breach." *McGowan v. Ferro*, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002). Thus, a breach of fiduciary duty must exist before a non-fiduciary can aid and abet in such breach. *See Malpiede v. Townson*, 780 A.2d 1075, 1096-97 (Del. 2001).

As explained above, Plaintiff has failed to state a claim for breach of fiduciary duty by the Board. Consequently, Plaintiff has also failed to state a claim that FWC aided and abetted any breach.

Count IV of the Complaint alleges that FWC breached its contract with Hercules. Under Delaware law, a breach of contract claim requires the existence of a contract, a breach of that contract, and damages suffered from the breach. *See Millett v. TrueLink, Inc.*, 533 F. Supp. 2d 479, 487-88 (D. Del. 2008).

Here, Plaintiff fails to identify any contractual provision that FWC allegedly breached. Plaintiff's general allegation that "FWC breached its contract with Hercules to render competent and sound advice and services regarding Hercules' 2010 executive compensation" (D.I. 1 ¶ 88) is conclusory. It is also predicated on inferences – such as that the 2010 executive compensation was unlawful or otherwise illegitimate and cannot have been the result of a proper process or exercise of business judgment – which, for reasons already explained, are not reasonable in this case.

Likewise, to the extent Plaintiff's claim against FWC sounds in professional negligence, Plaintiff must establish not only that FWC owed a duty to Hercules and breached that duty,

23

causing damages, but also must identify the applicable standard of care allegedly breached. *See Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573, 579 (D. Del. 2006). Here, the Complaint fails to do so.

Finally, in Count V, Plaintiff alleges the Executives were unjustly enriched. Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A. 2d 217, 232-33 (Del. 1999) (internal quotation marks omitted). Plaintiff's unjust enrichment claim relies on the allegation that the "2010 pay hikes for Hercules' CEO and top executives violated Hercules' pay-for performance policy and were unwarranted in light of Hercules' dismal 2010 financial performance." (D.I. 1 ¶ 91) For the reasons already explained, this claim is not plausible in the context of this case.

## CONCLUSION

For the reasons set forth above, the Court will grant the motions to dismiss and dismiss the Complaint in its entirety. A separate Order will be entered.[8]

_____

[8]In his May 22, 2012 letter to the Court (D.I. 51), Plaintiff requested leave to amend the Complaint to add claims arising from the Hercules shareholders' vote in 2012 against the Company's executive compensation plan. Defendants objected to this request. (D.I. 52) In addition to the fact that such relief must be sought by formal motion, *see* D. Del. LR 7.1.2, 15.1, which Plaintiff did not do, the Court finds that the amendment Plaintiff appears to be contemplating would be futile, as the proposed amended claims would suffer from the same defects that have led the Court to dismiss the operative Complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

24